The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Willis. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties prior to the hearing in a Pre-Trial Order entered by Deputy Commissioner W. Joey Barnes, dated 20 July 1994, which is incorporated herein by reference, and at and after the hearing as:
STIPULATIONS
1. The deposition of Dr. Ronald Neimkin was introduced at the hearing and received into evidence.
2. Following the hearing the parties submitted evidence which was made a part of the record and which included the deposition of Dr. E. Brown Crosby, a wage chart Industrial Commission Form 22 submitted per a cover letter of the defendant dated 30 January 1995, and a medical note submitted per a cover letter of plaintiff dated 24 January 1995. With regard to Dr Crosby's deposition, all objections raised by counsel are hereby OVERRULED.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the initial hearing plaintiff was 29 years old, with a date of birth of 20 October 1965. Plaintiff was left-hand dominant. Plaintiff's medical history included a nerve graft of the left index finger. Plaintiff's work history included machine operator, welding, working on assembly lines, self-employed as a tattoo artist, and assistant manager of a convenience store. Between 1991 and 1993 plaintiff worked for defendant, a temporary employment agency, where he was assigned to numerous jobs. During 1993 plaintiff had hobbies which included practicing martial arts four times per week for eight hours per week and lifting weights twice per week.
2. In September 1993 plaintiff was assigned by defendant to work at Schweitzer in a position as a shaft and wheel balancer. In this job, plaintiff used vibrating instruments to balance machine parts. Between grinding the parts, plaintiff would gauge them to ensure they were in balance.
3. In December 1993, after working for Schweitzer for about twelve weeks, plaintiff began to experience pain and weakness in his left, dominant hand. He went to the emergency room at Mission Memorial Hospital on 21 December 1993 and asked a treating physician if he was getting carpal tunnel syndrome. After an examination, the doctor's impression was possible carpal tunnel syndrome.
4. The emergency room physician referred plaintiff to Dr. Ronald Neimkin, an orthopedic surgeon, who specializes in treatment of the hands. Dr. Neimkin's first examination was on 30 December 1993, and at this time the results of a Tinel's test were negative and the results of a Phalen's test were positive. Dr. Neimkin's impression was early carpal tunnel syndrome. Plaintiff was given medication and told to work with a wrist splint. Dr. Neimkin ordered nerve conduction studies.
5. The second examination by Dr Neimkin was on 20 January 1994. At this time plaintiff reported that his condition had been improving while working with wrist splints; however, the night before he had awakened with numbness and tingling in his left hand. After an examination, Dr. Neimkin's opinion was probable ulnar entrapment at the elbow as opposed to carpal tunnel syndrome of the wrist.
6. The nerve conduction studies revealed a moderate, incomplete lesion at the left median nerve. On 8 March 1994 Dr. Neimkin discussed surgery with plaintiff to release the carpal tunnel and the Ghuyon's canal. Plaintiff chose to undergo surgery, and on 24 March 1994 (the medical note of this examination was not of record), plaintiff was given a pre-operative medical examination. However, the surgery was canceled because the carrier denied coverage. The examination on 24 March 1994 was the last treatment plaintiff received, although an independent medical evaluation was performed on 4 October 1994, one month before the hearing.
7. Plaintiff was out of work several months after December 1993. In early 1994 plaintiff returned to work for a construction company. His job duties were to clean debris at construction sites. Plaintiff worked for three weeks at this job and was paid $5.00 per hour under the table.
8. After the construction company, plaintiff returned to work for another temporary agency. Through this agency, plaintiff was assigned to work at ITT on an assembly line. In this job with ITT, plaintiff performed repetitive work, assembling 400 to 500 parts per hour. Plaintiff could not keep up with the assembly line, and he had to leave the job.
9. On 17 May 1994 plaintiff began working for SDX, and he had remained at this job for six months at the time of the hearing. At SDX plaintiff's job involves repetitive work; but he is able to change jobs occasionally, rather than performing the same activity continuously. However, while operating soldering equipment on a prolonged basis, plaintiff would develop a cramping sensation in his left hand, as told to Dr. Crosby.
10. Since plaintiff left defendant's employment at Schweitzer, and while performing repetitive work at ITT and SDX, the condition of plaintiff's left arm has deteriorated. At the time of the hearing plaintiff was experiencing pain in his entire arm from his hand to his neck.
11. There is insufficient evidence of record from which the undersigned can conclude that plaintiff's last injurious exposure to the hazards of carpal tunnel syndrome were with defendant. This is based on plaintiff's testimony that two later jobs involved repetitive work and that his condition deteriorated while with these employers.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSION OF LAW
Plaintiff has failed to prove by the greater weight of the evidence that the condition for which he complains, carpal tunnel syndrome, is causally related to his employment with defendant-employer at Schweitzer. Further, plaintiff has failed to prove that his last injurious exposure to the conditions of carpal tunnel syndrome were while working in the employment of the defendant. N.C. Gen. Stat. § 97-2 (6); § 97-57.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusion of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim for compensation pursuant to the North Carolina Workers' Compensation Act must be, and the same is hereby, DENIED.
2. Each side shall pay its own cost, except that defendants shall pay, if not already paid, an expert witness fee in the amount of $150.00 to Dr. Crosby and $200.00 to Dr. Neimkin.
 S/ _____________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _______________________________ J. RANDOLPH WARD COMMISSIONER
S/ _______________________________ BERNADINE S. BALLANCE COMMISSIONER